**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| **Kurt Wallace,**<br>        Plaintiff,<br><br>v.<br><br>**James Winchell,**<br>**Individually;**<br><br>**Deputy Sheriff Alex Payne,**<br>**Individually and in his official capacity;**<br><br>**Deputy Sheriff Jonathan Snow,**<br>**Individually and in his official capacity;**<br><br>**Bullitt County Sheriff's Office,**<br><br>        and<br><br>**DOES 1-50, inclusive,**<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CASE NO.** 3:26-cv-56-BJB

**COMPLAINT FOR VIOLATION OF**
**CIVIL RIGHTS UNDER 42 U.S.C § 1983**

**Jury Demand**

---

## COMPLAINT

---

**Comes Now Plaintiff Kurt Wallace,** by and through undersigned counsel, to bring this

complaint for violation of civil rights under 42 U.S.C. §1983 and related law.

### INTRODUCTION

1. This civil rights action arises from the retaliatory and irregular arrest of Kurt Wallace

   ("Kurt") after he took steps of action regarding grievances in Bullitt County, Kentucky.

   Although allegations of unauthorized practice of law in Kentucky are ordinarily handled

   through warnings, referrals, or non-custodial summonses, Defendants singled out Kurt

   for immediate arrest months after the alleged conduct—executing a warrant signed and

1

carried out on the same day as Kurt accompanied a lady visiting the Judicial Center at the Clerk's window seeking answers about her incarcerated husband. The warrant, generated on January 28, 2025, purported to charge Kurt with conduct occurring on December 6, 2024, yet listed the "violation time" as the exact moment of his arrest. This departure from ordinary enforcement practices, coupled with Defendants' knowledge that Kurt was associated with an incarcerated individual alleging official misconduct, demonstrates that the arrest was driven not by legitimate law-enforcement need but by retaliation for Kurt's protected First Amendment activity. Through this action under 42 U.S.C. § 1983, Kurt seeks redress for the violation of his constitutional rights and the misuse of legal process undertaken to punish him for helping another citizen challenge official misconduct.

## JURISDICTION AND VENUE

2. This action arises under the Constitution, 42 U.S.C. § 1983, and the First and Fourteenth Amendments to the Constitution.

3. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Bullitt County, Kentucky.

## PARTIES

5. Plaintiff Kurt Wallace lives in Kentucky.

6. Defendant James Winchell is an Assistant Bullitt County Attorney and Notary, acting under color of state law, at all relevant times.

7. Defendant Alex Payne is the Chief Deputy for the Bullitt County Sheriff's Office, acting under color of state law at all relevant times.

8. Defendant Jonathan Snow is a Bullitt County Sheriff's Deputy, acting under color of state law at all relevant times.

9. Defendant Bullitt County Sheriff's Office is a law-enforcement agency located in Bullitt County, Kentucky, and the entity responsible for the Sheriff's and Deputies' policies, customs, practices, and training of employees.

## FACTUAL ALLEGATIONS

10. On or about December of 2024, Kurt presented in Bullitt Circuit Court during a judicial proceeding, at which Kurt was representing himself and not acting as a representative of another.

11. For nearly two months thereafter, Kurt received no warning, no citation, and no notice that any charge had been initiated.

12. On or about January 27, 2025, Kurt was again present in the Bullitt County Judicial Center and made a complaint regarding perceived misconduct by a deputy sheriff.

13. On January 28, 2025, Kurt was again present at the Bullitt County Judicial Center, at the Clerk's window.

14. Also on January 28, 2025, Deputy Alex Payne drafted an allegation at approximately 11:06 a.m., asserting that a "Kurt Wallace" had violated a Kentucky statute concerning unauthorized practice of law by "appearing in Bullitt Circuit Court on behalf of Charles Michael Zoeller and arguing a petition for writ of habeas corpus" on December 6, 2024.

15. Defendant James Winchell, acting under color of state law and within the Bullitt County Attorney's Office, participated in the creation, preparation, and notarization of an affidavit used to support the arrest warrant issued for Kurt on January 28, 2025.

3

16. Defendant Alex Payne signed the affidavit used to support the arrest warrant issued for Kurt on January 28, 2025, even though Defendant Payne was not a witness to the acts he alleged in his affidavit.

17. Winchell was not exercising a prosecutorial role, but instead functioning as a complaining witness who attested to or facilitated the attestation of facts purportedly establishing probable cause.

18. Winchell's notarization and procurement of the affidavit materially contributed to the issuance of an irregular, retaliatory, and unsupported arrest warrant against Kurt.

19. Winchell's actions were undertaken to manufacture or bolster probable cause for a charge that lacked a factual basis and were done in retaliation for Kurt's protected First Amendment activity and association.

20. Winchell's conduct was essential to the execution of the retaliatory arrest, and he proximately caused the constitutional injuries described herein.

21. On January 28, 2025, at 11:51 a.m., Judge Porter of Bullitt Circuit Court signed an electronic warrant for Kurt's arrest based on the allegation made by Deputy Payne.

22. The warrant was immediately executed by Deputy Jonathan Snow that same day at the Bullitt County Judicial Center.

23. According to the Uniform Citation, the alleged offense time was 3:40 p.m. on January 28, 2025 — the exact same time listed as the time of Kurt's arrest.

24. Thus, Kurt was arrested for a violation that allegedly occurred at the exact moment he was arrested, despite Payne's allegation referring to conduct from December 6, 2024 [sic].

4

25. Kurt was peacefully present in a public area of the Judicial Center, engaged in routine, non-disruptive conduct, when Defendants executed a custodial arrest.

26. Typically, first-time allegations of unauthorized practice of law in Kentucky result in a warning, referral, or at most a summons, not immediate custodial arrest.

27. The abrupt issuance of an arrest warrant—signed and executed on the same day—deviates sharply from ordinary enforcement practices.

28. Kurt's involvement in petitioning for habeas relief, criticizing official conduct, and facilitating judicial review of detention, prior to the arrest, are all forms of protected First Amendment activity.

29. The timing, manner, and irregularities of the arrest demonstrate that Defendants' actions were taken in retaliation for Kurt's protected speech and association.

30. The allegation underlying the warrant lacked probable cause: Kurt never represented himself as an attorney, never signed pleadings as counsel, and was not acting in any representative legal capacity.

31. At all relevant times, Defendant Alex Payne was present for, participated in, and had actual knowledge of the preparation, notarization, and use of the defective affidavit that served as the basis for Kurt's arrest. Payne had a realistic opportunity to prevent or correct the constitutional violations described herein, including the use of a warrant premised on misstated facts, an impossible offense time, and the absence of probable cause, yet failed to do so. Instead, Payne affirmatively facilitated the arrest and took no steps to intervene to stop or mitigate the unlawful deprivation of Kurt's rights.

32. As a direct and proximate result of Defendants' conduct, Kurt suffered a significant loss of liberty when he was taken into custody, booked, and confined in jail, under circumstances that were unlawful and unjustified.

33. The arrest and overnight incarceration caused Kurt severe emotional distress, including anxiety, fear, shame, anger, and a continuing sense of vulnerability regarding future retaliatory actions by law enforcement.

34. Being confined in a jail cell exposed Kurt to degrading health conditions through denied medically necessary equipment, CPAP device, and basic bedding such as a pillow and blankets. Confinement also caused humiliation and embarrassment, both during the incident and afterward as he was forced to explain the arrest to family, friends, and members of the community.

35. The arrest damaged Kurt's personal and professional reputation, created public suspicion and stigma, and caused him to fear lasting harm to his standing in the community.

36. Kurt has experienced sleep disruption, persistent worry, loss of sense of security, and ongoing emotional turmoil as a result of being wrongfully deprived of his freedom and treated as a criminal. These injuries continue to impact his well-being, and will require time and potentially professional support to fully resolve.

37. Even after release from the jail, Kurt was subject to a bond which continued for many months after final dismissal of the charge.

## CAUSES OF ACTION

### Count I – First Amendment Retaliatory Arrest (42 U.S.C. § 1983)

38. Kurt incorporates paragraphs 1–37 as if fully stated herein.

39. Kurt engaged in protected speech by assisting an incarcerated man in seeking judicial redress.

40. Defendants arrested Kurt in retaliation for that protected activity.

41. The arrest lacked probable cause or, alternatively, was executed in a manner so irregular as to demonstrate retaliatory motive.

42. Such conduct violated clearly established constitutional rights, and no reasonable officer could have believed this arrest was lawful.

### Count II – Selective Enforcement (Fourteenth Amendment / §1983)

43. Kurt incorporates paragraphs 1–42 as if fully stated herein.

44. Defendants intentionally applied KRS 524.130 against Kurt in a manner inconsistent with its normal enforcement, and for retaliatory reasons.

45. Other similarly situated individuals accused of unauthorized practice of law in Kentucky are not subjected to immediate custodial arrest.

### Count III – False Arrest (Kentucky Law)

46. Kurt incorporates paragraphs 1–45 as if fully stated herein.

47. Kurt was arrested without lawful basis and without probable cause under Kentucky law.

### Count IV – Abuse of Process (Kentucky Law)

48. Kurt incorporates paragraphs 1–47 as if fully stated herein.

49. Defendants used legal process—specifically, a warrant—in an irregular and retaliatory manner for a purpose other than that for which the process was designed.

### Count V – Monell Liability (Against Bullitt County Sheriff's Office)

50. Kurt incorporates paragraphs 1–49 as if fully stated herein.

51. Bullitt County Sheriff's Office was responsible for the training, supervision, instruction, and discipline of the deputies who conducted an unlawful, retributive arrest and detention of Kurt.

52. Defendant Bullitt County Sheriff's Office intentionally, knowingly, and recklessly failed to instruct, supervise, control, and discipline on a continuing basis, Defendants Payne and Snow, in their duties to refrain from unlawfully and maliciously detaining and arresting individuals, amounting to a deliberate indifference to Kurt's constitutionally protected rights.

53. The speed with which the series of events occurred here suggests that Bullitt County personnel are familiar with routinely creating affidavits to notarize without editing, checking for accuracy, without personal knowledge, and to carry out retaliation rather than law enforcement.

54. The affidavit supporting the arrest warrant was written and notarized under circumstances suggesting that no meaningful inquiry was made into the accuracy of the statements upon which the criminal process relied, to include falsely reporting the date of the habeas hearing, identifying the wrong statute under which the complaint was brought, and making a sworn statement to an event which was not observed by the witness.

55. Because Defendant Payne is the Chief Deputy, and has previously been employed as the head of the State Department of Criminal Justice Training, the swift actions of Defendant Payne suggest that the Sherriff's Office culture supports and approves of reckless and malicious creation and validation of improper or retaliatory accusations.

56. Defendant Snow must have also been subject to bad training, or there would have been an unwillingness to participate in an improper arrest of a misdemeanor which was fabricated by actions of a supervisor.

57. Because the Deputy Defendants suffered no discipline for their improper actions, the Sherriff's Office has ratified their actions and is liable under *Monell.*

58. As a direct and proximate result of the acts of Defendant Bullitt County Sheriff's Office, Kurt suffered emotional injuries, reputational harm, and severe mental anguish in connection with the deprivation of his constitutional rights guaranteed by the various provisions of the Constitution of the United States of America and protected by 42 U.S.C. Section 1983.

59. The acts of Defendants Payne, Snow, and the Bullitt County Sheriff's Office were wanton, malicious, oppressive, thus entitling Kurt to an award of punitive damages.

**Count VI – Fabrication of Evidence / Use of False or Defective Affidavit by a Complaining Witness (42 U.S.C. § 1983) (Against Defendants Winchell and Payne)**

60. Kurt incorporates paragraphs 1-59 as if fully stated herein.

61. Defendant Winchell, acting under color of law, participated in the preparation, creation, notarization, or procurement of an affidavit used to support the arrest warrant issued for Kurt.

62. Winchell's actions were investigative or administrative, not advocacy related, and therefore fall outside the protection of absolute prosecutorial immunity.

63. Defendant Payne knew or should have known that he could not legitimately sign an affidavit as a witness when he was not a witness.

9

64. Winchell's and Payne's actions in procuring the affidavit were a substantial factor in causing Kurt's arrest without probable cause, and violating Kurt's rights under the Fourth and Fourteenth Amendments.

65. Winchell's and Payne's conduct was malicious, undertaken with reckless disregard for the truth, and intended to facilitate a retaliatory prosecution in violation of Kurt's clearly established constitutional rights.

**Count VII – Failure to Intervene in Constitutional Violations (42 U.S.C. § 1983)**
**(Against Defendant Alex Payne)**

66. Kurt incorporates paragraphs 1–65 as if fully stated herein.

67. At all relevant times, Defendant Alex Payne was a sworn law-enforcement officer acting under color of state law and had a duty to prevent the violation of constitutional rights committed in his presence or with his knowledge.

68. Defendant Payne knew or should have known that Kurt's arrest was unlawful, retaliatory, and unsupported by probable cause, including but not limited to the facts that the alleged offense predated the arrest by nearly two months, the affidavit supporting the warrant contained material defects, and the Uniform Citation listed the time of the alleged offense as the exact moment of Kurt's arrest.

69. Defendant Payne had a realistic and meaningful opportunity to intervene to prevent or halt the constitutional violations committed against Kurt, including the execution of a retaliatory arrest and the use of a defective and misleading affidavit to justify that arrest.

70. Despite having such opportunity, Defendant Payne failed to take reasonable steps to intervene, prevent, or mitigate the unlawful arrest, detention, and deprivation of Kurt's constitutional rights, and instead affirmatively participated in and facilitated the unconstitutional conduct.

10

71. Defendant Payne's failure to intervene was a direct and proximate cause of Kurt's loss of liberty, emotional distress, reputational harm, and other damages.

72. By failing to intervene, Defendant Payne violated Kurt's clearly established rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and is liable under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

**Wherefore Kurt prays this Court issue relief as follows:**

1. Declare that the acts and arrest complained of herein are in violation of the Constitution;

2. Issue appropriate injunctive relief and other equitable relief against all Defendants;

3. Award Kurt compensatory damages;

4. Award Kurt punitive damages against the individual Defendants;

5. Award Kurt emotional distress and humiliation damages;

6. Award Kurt pre- and post-judgment interest on damages;

7. Award Kurt reasonable attorney's fees and costs;

8. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Kurt demands trial by jury on all issues so triable.

## VERIFICATION

Kurt Wallace respectfully, through Counsel, Verifies this Complaint to be true and accurate to the best of my knowledge, information, and belief this 26th day of January, 2026.

Respectfully Submitted,

 /s/Adrienne Southworth
Adrienne Southworth
112 Poplar Drive
Lawrenceburg, Kentucky 40342
502-600-1547
AttyAky@proton.me
*Counsel for Kurt Wallace*