**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**

| | | |
|---|---|---|
| **Kurt Wallace,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **James Winchell,** | ) | **CASE NO. 3:26-CV-0056-BJB** |
| **Deputy Sheriff Alex Payne,** | ) | |
| **Deputy Sheriff Jonathan Snow,** | ) | |
| **Bullitt County Sheriff's Office,** | ) | |
| and | ) | |
| **DOES 1-50, inclusive,** | ) | |
| Defendants. | ) | |

---

### RESPONSE TO MOTION TO DISMISS

---

**Comes Now Plaintiff Kurt Wallace,** by and through undersigned counsel, ("Kurt") and submits his Response to Defendants' Joint Motion to Dismiss pursuant to FRCP 12(b)(6). Kurt respectfully requests this Court to Enter an Order Denying Defendant's Motion to Dismiss for the following reasons:

1) Defendants' Motion to Dismiss seeks to characterize a textbook retaliatory arrest as routine law enforcement. But the facts alleged in the Complaint, accepted as true at this stage, tell a different story: a warrant drafted and executed in a single day — with an affidavit sworn by a non-witness, listing a crime date that is factually impossible, citing the wrong statute, and signed months after the underlying conduct without any prior warning or citation — targeting a man who had just filed a complaint against a deputy and was present in the courthouse assisting another in challenging official misconduct. Taken as a whole, the Complaint plausibly alleges constitutional violations across every count.

1

2) Defendants' arguments supplement the pleadings with their own versions of the facts, seeking to apply too demanding a standard at the motion to dismiss stage.

3) Defendants rely on immunity doctrines that are squarely inapplicable under controlling authority, such as absolute immunity for a witness which specifically does not apply to complaining witnesses as here.

## STANDARD OF REVIEW

Defendants correctly note the governing standard under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007): the Court must accept the complaint's well-pled allegations as true, construe them in the light most favorable to Kurt, and draw all reasonable inferences in his favor. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). What Defendants fail to acknowledge is the corollary: the Court need only find that factual allegations, accepted as true, raise a right to relief that is plausible — not probable, and not certain. The Complaint here readily satisfies that standard.

## ARGUMENT

### I. PLAINTIFF HAS PLAUSIBLY ALLEGED A FIRST AMENDMENT RETALIATORY ARREST

#### A.  Kurt's Conduct Was Constitutionally Protected.

Defendants argue that Kurt's assistance to another man in need of habeas relief constituted criminal unauthorized practice of law, and therefore was not protected First Amendment activity. This argument has two flaws.

First, the Complaint expressly alleges that Kurt never represented himself as an attorney, never signed pleadings as counsel, and was not acting in any representative legal capacity but as a third party. At the pleading stage, this allegation must be accepted as true. Whether Kurt's conduct rose to the level of unauthorized practice of law under KRS 524.130 is a factual question

2

that cannot be resolved on a Rule 12(b)(6) motion. Defendants' argument that the Complaint "establishes" criminal conduct is derived from a selective reading of the pleadings that ignores this directly contradicting allegation. It is important to note that habeas relief can be grated through third party standing in certain circumstances. *See Whitmore v. Arkansas*, 495 U.S. 149 (1990) ("the burden is on the next friend clearly to establish the propriety of his status and thereby justify the jurisdiction of the court") (cleaned up); *Day v. Skinner*, 300 S.W.2d 48, 50 (Ky. 1957) ("It is the general rule that a friend, a relative, or a person having some interest in the one detained may also make application for a writ of habeas corpus.") An assumption that Kurt attending court was for illegal purposes is itself discriminatory.

Second, even crediting Defendants' characterization, the constitutional analysis does not end there. Kurt's involvement in petitioning for habeas relief, criticizing official conduct, and facilitating judicial review of detention are all forms of protected First Amendment activity. Assisting others even with legal information, accessing the courts for oneself, criticizing the conduct of law enforcement, and filing complaints about deputies are activities at the core of the First Amendment's protection of petitioning the government for redress of grievances. The Sixth Circuit has made clear that retaliation by public officials against the exercise of First Amendment rights is itself a constitutional violation, and that "the issue in a First Amendment retaliation claim is the grounds actually relied upon, not those that might have been relied upon by some other government agent in a similar situation." *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010).

B. **The Complaint Plausibly Alleges an Absence of Probable Cause — or Satisfies the *Nieves* Exception.**

Defendants invoke *Nieves v. Bartlett*, 587 U.S. 391 (2019), for the proposition that Kurt must plead the absence of probable cause. Kurt acknowleges that this is the general rule.

3

However, the Complaint plausibly alleges both the absence of probable cause and the applicability of the *Nieves* exception.

### 1. The absence of probable cause

The Sixth Circuit has held that "an officer or investigator cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003), cited approvingly in *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). If an arrest warrant affidavit contains false statements or material omissions, the court sets aside the statements and includes the information omitted in order to determine whether the affidavit is still sufficient to establish probable cause. *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010).

Here, the warrant was fatally defective on its face. Defendant Alex Payne signed the affidavit used to support the arrest warrant even though Defendant Payne was not a witness to the acts he alleged. (This fact pattern is twisted in Defendants' motion, but is nevertheless alleged at length in Kurt's Complaint.) The warrant purported to charge Kurt with misdemeanor conduct occurring on December 6, 2024. Had Defendant Snow believed the warrant to be legitimate, he would not have listed the "violation time" as 3:40 p.m. on January 28, 2025. He would have found it odd to arrest someone who presumably should have been arrested when the misdemeanor was committed in front of the eyewitness Defendant Payne. Because this entire sequence of logic that could be been taken by Defendant Snow was not, it is a plausible if not stronger inference that Defendant Snow was aware of the anomalies and participated accordingly.

4

### 2. The *Nieves* exception

Even if probable cause technically existed, *Nieves v. Bartlett* recognized a "narrow qualification" warranted "for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." 587 U.S. 391, 393 (2019). A plaintiff may proceed upon presenting "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.*, at 407.

The Supreme Court later modified the exception in *Gonzalez v. Trevino*, 602 U.S. 653 (2024) that it "does not require 'virtually identical and identifiable comparators'" and that "the fact that no one has ever been arrested for engaging in a certain kind of conduct — especially when the criminal prohibition is longstanding and the conduct at issue is not novel — makes it more likely that an officer has declined to arrest someone for engaging in such conduct." *Brown v. City of Albion, Michigan*, 136 F.4th 331, 340 (6th Cir. 2025), quoting *Trevino*, at 658.

Here, Kurt has alleged that first-time allegations of unauthorized practice of law in Kentucky ordinarily result in a warning, referral, or non-custodial summons, not immediate custodial arrest. This is precisely the circumstance the *Nieves* exception was designed to address. Defendants offer no rebuttal to the exception beyond denying its existence. At the appointed time, not in the middle of a motion under Rule 12, objective evidence of that allegation can be produced.

### C. The Complaint Plausibly Alleges Causal Connection and Retaliatory Motive.

On January 27, 2025, Kurt was present in the Bullitt County Judicial Center and made a complaint regarding perceived misconduct by a deputy sheriff. The very next day, January 28, 2025, Deputy Payne drafted an allegation at approximately 11:06 a.m. and the warrant was signed by Judge Porter at 11:51 a.m. and immediately executed. The temporal proximity between Kurt's complaint against a deputy and the instantaneous issuance and execution of an arrest

5

warrant — for conduct allegedly occurring nearly two months earlier, without any prior warning — is powerful circumstantial evidence of retaliatory motive. The Sixth Circuit has held that the "adverse action was motivated at least in part by the plaintiff's protected conduct" is all that causation requires. *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002), quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Defendants' reliance on *Malley v. Briggs*, 475 U.S. 335 (1986), for the proposition that Deputy Snow was entitled to rely on a judicially secured warrant is also unavailing at the pleading stage. *Malley* provides this protection only where the arresting officer does not and could not know that the applying officer made false statements or omissions in the application relied upon by the judge. The Complaint alleges that Deputy Payne had actual knowledge of the preparation, notarization, and use of the defective affidavit — including the impossible offense time and the fact that he was not a witness. As already covered above, the complaint alleges that Defendant Snow furthered the oddities of the incident through the citation. Defendants cannot invoke *Malley* as a shield for a Rule 12 dismissal when the alleged unconstitutional conduct is full of factual questions flowing from their own hands.

## II. PLAINTIFF'S SELECTIVE ENFORCEMENT CLAIM IS PLAUSIBLY PLED

Defendants argue that Plaintiff has failed to allege membership in a protected class, failed to identify similarly situated comparators, and failed to allege discriminatory purpose. Each argument fails.

### A. Group membership

Defendants read the selective enforcement doctrine too narrowly. *Gardenhire v. Schubert* expressly recognized that the identifiable group element encompasses both traditional suspect classifications like race and religion, or "a group exercising constitutional rights." 205 F.3d 303,

319 (6th Cir. 2000) (internal quotations omitted). Kurt alleges he was targeted because he was exercising his First Amendment rights as an active member of the public attending court hearings and seeking public records by petitioning the government and criticizing official misconduct — a constitutionally protected group under *Gardenhire*. Defendants' assertion that Kurt does not belong to any identifiable group directly contradicts controlling Sixth Circuit authority.

### B. Similarly situated individuals

The Complaint alleges that other similarly situated individuals accused of unauthorized practice of law in Kentucky are not subjected to immediate custodial arrest and that first-time allegations of unauthorized practice of law typically result in a warning, referral, or at most a summons. These allegations identify a universe of comparable actors — other persons accused of the same offense under the same statute — who were not subjected to immediate custodial arrest. This is precisely the type of comparative allegation that the Sixth Circuit considers sufficient at the pleading stage. Defendants demand "truly aligned" comparators, but that is a summary judgment standard, not a motion to dismiss standard.

### C. Discriminatory purpose

The Complaint alleges a discriminatory purpose through the powerful circumstantial evidence of irregular and anomalous enforcement: the warrant was generated on the same day as Kurt accompanied a lady visiting the Judicial Center at the Clerk's window; the charge was filed months after the alleged conduct with no prior warning, citation, or notice; and the arrest was executed immediately after Kurt had made a complaint about a deputy's misconduct the prior day.

"Departures from normal procedures" constitute probative evidence of discriminatory purpose. *See United States v. Myrie,* 167 F.4th 876 (6th Cir. 2026). The alleged facts, accepted as

7

true, plausibly ascribe a retaliatory purpose rather than legitimate law enforcement interest to Defendants' application of KRS 524.130. The wholesale departure from standard bygone misdemeanor enforcement practice here is squarely within that framework.

### III. PLAINTIFF'S STATE LAW CLAIMS ARE VIABLE

#### A. <u>False Arrest</u>

*Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006) held that police officers cannot, in good faith, rely on a judicial determination of probable cause when that determination was premised on material misrepresentations to the court, and that detention pursuant to such deceptive practices violates the Fourth Amendment. The Kentucky false arrest analysis similarly requires that an officer possess "reasonable grounds" to arrest. *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007). Arrests "without reasonable grounds" are subject to civil remedy. *Id.*, citing *Lexington-Fayette Urban County Gov't v. Middleton*, 555 S.W.2d 613, 619 (Ky. App. 1977).

Defendants argue that Deputy Snow's execution of a valid warrant immunizes the false arrest claim. But a warrant procured through a materially defective affidavit — sworn by a non-witness, containing obvious errors, and covered for by citing an impossible offense time — does not confer privilege on the arresting officer. The Complaint plausibly alleges that reasonable grounds were absent here given the affidavit's multiple fatal defects. Therefore, the motion to dismiss these claims should be denied.

#### B. <u>Abuse of Process</u>

Defendants argue the abuse of process claim fails because Defendants did nothing more than carry out the process to its authorized conclusion. This argument ignores the Complaint's core allegations. Defendants used legal process — specifically, a warrant — in an irregular and retaliatory manner for a purpose other than that for which the process was designed. The process was initiated not to enforce Kentucky's statute as customarily applied, but to punish Kurt for his

association with an incarcerated man, challenging official misconduct, and complaining about a deputy. The Kentucky Supreme Court has recognized that an illegitimate objective driving the use of process supports this claim. *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998). Whether Defendants' retaliatory objective constitutes the requisite illegitimate purpose is a factual determination that cannot be resolved on the pleadings.

## IV. PLAINTIFF'S FABRICATION OF EVIDENCE CLAIM IS ADEQUATELY PLED

### A. <u>The Constitutional Basis Is Sufficiently Identified.</u>

Defendants argue that Plaintiff failed to specify whether Count VI is grounded in the Fourth or Fourteenth Amendment, citing *Clark v. Abdallah*, 131 F.4th 432 (6th Cir. 2025). That case, however, supports Plaintiff's position. *Id.*, at 447 ("the argument is a nonstarter because we have recognized fabrication-of-evidence claims under the Fourth and Fourteenth Amendments.") Ultimately, fabrication-of-evidence claims which point more specifically to pre-trial search and seizure tend to strike at a Fourth Amendment violation, and violations which result in court findings tend to lean toward the Fourteenth Amendment. Regardless of how such hairs are split here, between an affidavit and an issued warrant, a complaint which alleges fabrication to manufacture probable cause and to seek a conviction puts defendants on notice of claims under both constitutional provisions. It is simply not plausible to assert that Defendants are ignorant of what the Complaint alleges to constitute notice.

### B. <u>The Complaint Plausibly Alleges Knowing Fabrication.</u>

Defendants contend that Plaintiff's allegations are contradictory and do not establish fabrication. But the Complaint alleges specific, concrete defects that demonstrate knowing falsity: Defendant Payne knew or should have known that he could not legitimately sign an affidavit as a witness when he was not a witness. The affidavit, as alleged, contained a false reporting of the date of the habeas hearing, identification of the wrong statute under which the

complaint was brought, and a sworn statement to an event which was not observed by the witness.

Under *Tanner v. Walters*, 98 F.4th 726 (6th Cir. 2024), a plaintiff need only show that the defendant "knowingly fabricated evidence" and that "there is a reasonable likelihood that the false evidence could have affected the judgment of the jury." An affiant who swears to facts he did not witness and records an offense time that is physically impossible has knowingly fabricated the evidentiary predicate for the warrant. The *Tanner* standard is satisfied.

Defendants' reliance on *Brown v. Louisville Jefferson County Metro Government*, 2017 WL 4288886 (W.D. Ky. 2017), is misplaced. There, the complaint failed to allege facts that the criminal charge was based on a false accusation at all. Here, by contrast, the Complaint alleges with specificity the defects and a direct causal link to Kurt's arrest. As pled, the Complaint should not be dismissed.

## V. WINCHELL IS NOT ENTITLED TO ABSOLUTE IMMUNITY

Defendants invoke *Briscoe v. LaHue*, 460 U.S. 325 (1983), and *Rehberg v. Paulk*, 566 U.S. 356 (2012), for the proposition that Winchell, as a complaining witness, enjoys absolute immunity from § 1983 liability. This argument is foreclosed by binding Supreme Court precedent that Defendants conspicuously do not address: *Kalina v. Fletcher*, 522 U.S. 118 (1997).

In *Kalina*, the Supreme Court held unanimously that a prosecutor who personally executes a certification for determination of probable cause in support of an arrest warrant application acts as a complaining witness rather than an advocate, and is therefore *not* entitled to absolute prosecutorial immunity for that function. The Court explained that "testifying about facts is the function of the witness, not of the lawyer" and that "[e]ven when the person who

10

makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness." *Id.*, at 130-31. The Court further held that § 1983 creates a damages remedy against a prosecutor for making false statements of fact in an affidavit supporting an application for an arrest warrant, as such conduct is not protected by the doctrine of absolute prosecutorial immunity.

Defendant Winchell's case is materially indistinguishable from *Kalina*. The Complaint alleges that Winchell was not exercising a prosecutorial role, but instead functioning as a complaining witness who attested to or facilitated the attestation of facts purportedly establishing probable cause. Winchell participated in the creation, preparation, and notarization of an affidavit used to support the arrest warrant. Under *Kalina*, this conduct falls outside the protection of absolute immunity. Furthermore, *Malley v. Briggs*, 475 U.S. 335 (1986) noted that complaining witnesses were not absolutely immune at common law either. *Id.*, at 340-41.

Defendants' reliance on *Briscoe* and *Rehberg* conflates testimonial immunity with immunity for investigative or administrative conduct that precedes testimony. The Sixth Circuit has squarely held that "absolute testimonial immunity does not 'relate backwards' to protect a defendant for any activities he allegedly engaged in prior to taking the witness stand for his testimony." *Gregory v. City of Louisville*, 444 F.3d 725, 738 (6th Cir. 2006) (internal citations omitted). The § 1983 claims against Winchell should therefore not be dismissed.

## VI. PLAINTIFF'S MONELL CLAIM IS PLAUSIBLY PLED

Defendants argue that the Complaint fails to identify a BCSO policy or custom and fails to establish the causation required under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). The Complaint adequately alleges *Monell* liability under multiple theories.

11

### A. Ratification

Because the Deputy Defendants suffered no discipline for their improper actions, the BCSO has ratified their actions. Ratification of unconstitutional conduct by policymakers is a recognized theory of *Monell* liability. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 418 (1997).

### B. Policy of Reckless Affidavit Preparation

The Complaint alleges that the affidavit supporting the arrest warrant was written and notarized under circumstances suggesting that no meaningful inquiry was made into the accuracy of the statements upon which the criminal process relied — including false dates, the wrong statute, and a non-witness signing as though present. The speed with which the series of events occurred suggests that Bullitt County personnel are familiar with routinely creating affidavits to notarize without editing, checking for accuracy, without personal knowledge, and to carry out retaliation rather than law enforcement. This alleges a custom of deliberate indifference to constitutional accuracy in the warrant application process.

### C. Failure to Train

The Sixth Circuit has recognized that a failure to train can constitute a "deliberate or conscious choice" constituting actionable policy where the failure "has the highly predictable consequence" of constitutional violations. *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006), citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Failing to train officers on the constitutional requirements for warrant affidavits — specifically, that affiants must have personal knowledge of the attested facts — has the highly predictable consequence of exactly the constitutional violation alleged here.

12

### D.  Payne's Senior Role as Circumstantial Evidence

Because Defendant Payne is the Chief Deputy, and has previously been employed as the head of the State Department of Criminal Justice Training, the swift actions of Defendant Payne suggest that the BCSO's culture supports and approves of reckless and malicious creation and validation of improper or retaliatory accusations. The seniority and training expertise of the officer who engaged in this conduct makes it more, not less, plausible that the conduct reflects institutionalized practice rather than isolated misconduct.

## VII. PLAINTIFF'S FAILURE TO INTERVENE CLAIM IS ADEQUATELY ALLEGED

Defendants argue that: (1) no underlying constitutional violation exists; (2) Payne had no duty to intervene in the actions of a non-officer (Winchell); and (3) Payne had no realistic opportunity to prevent the harm. Each argument fails both in substance and in appreciating the allegations of the Complaint.

First, as demonstrated above, the Complaint adequately alleges underlying constitutional violations that Payne observed and participated in.

Second, Defendants' characterization of Payne's role misreads the Complaint. The failure to intervene claim against Payne is not premised solely on his failure to stop Winchell; it is premised on Payne's failure to prevent the execution of an arrest he knew to be unlawful. Deputy Payne was present for, participated in, and had actual knowledge of the preparation, notarization, and use of the defective affidavit that served as the basis for Kurt's arrest. Payne had a realistic opportunity to prevent or correct the constitutional violations described herein — including the use of a warrant premised on misstated facts, an impossible offense time, and the absence of probable cause — yet failed to do so. Payne was the architect of the warrant application and the direct superior of Deputy Snow. His opportunity to intervene was complete.

Third, *Daugherty v. Louisville-Jefferson County Metro Government*, 495 F. Supp. 3d 513, 525 (W.D. Ky. 2020) outlines elements of a failure to intervene claim as: the defendant observed or had reason to know that a constitutional violation would occur; and the defendant had both the opportunity and the means to prevent the harm. Both elements are adequately pled here.

## VIII. PRESERVATIONS AND ACKNOWLEDGEMENTS

Plaintiff does not pursue respondeat superior liability against BCSO under § 1983, as *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978) forecloses such a theory. Claims under *Monell* are premised instead on BCSO's own policy, custom, ratification, and failure to train as alleged in Count VII. Plaintiff likewise acknowledges that BCSO's sovereign immunity under Kentucky law bars state-law vicarious liability claims against the BCSO.

Plaintiff does not, however, concede that supervisory liability is unavailable against Defendant Payne individually. Supervisory liability under § 1983 is a legally distinct theory from respondeat superior and is not foreclosed by *Monell*. Where, as here, a supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it," personal liability attaches. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998).

The Complaint alleges that Payne was not a passive supervisor but the direct orchestrator of the defective warrant affidavit — drafting, notarizing, and deploying it within close proximity of Kurt's complaint against a fellow deputy. Payne's supervisory position over Deputy Snow does not immunize him; it underscores his ability and obligation to prevent the constitutional violation he himself set in motion.

Plaintiff preserves all punitive damages claims against Defendants Winchell, Payne, and Snow in their personal capacities. To the extent any conflation has occurred in the pleadings between remedies and counts, Kurt clarifies that he simply seeks the maximum remedy reachable either in equity or at law.

### CONCLUSION

The Complaint plausibly alleges across all counts that Kurt was targeted by a retaliatory, fabricated arrest designed to punish him for exercising his First Amendment rights and for challenging official misconduct. The legal theories are sound, the factual allegations are specific and detailed, and controlling authority supports the viability of every claim. Defendants' Motion to Dismiss should be denied in each of its sections, and this matter should proceed to full disposition.

Respectfully Submitted,

 /s/Adrienne Southworth
Adrienne Southworth
112 Poplar Drive
Lawrenceburg, Kentucky 40342
502-600-1547
AttyAky@proton.me
*Counsel for Kurt Wallace*

15

**CERTIFICATE OF SERVICE**

I certify that this Response to Defendants' Joint Motion to Dismiss was filed and served via the CM/ECF system on April 20, 2026, to the following:

**Carol Shureck Petitt**
**Matthew R. Bastin**
VAUGHN PETITT LEGAL GROUP, PLLC
7500 West Highway 146
Pewee Valley, Kentucky, 40056
cpetitt@vplegalgroup.com
mbastin@vplegalgroup.com
*Counsel for Defendants*


                                    /s/Adrienne Southworth
                                    Adrienne Southworth