**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**

| | | |
|---|---|---|
| **Kurt Wallace,** | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO.   3:26-cv-56-BJB____ |
| | ) | |
| **James Winchell, et. al.** | ) | |
| Defendants. | ) | |

---

### REPLY IN SUPPORT OF DEFENDANTS WINCHELL, PAYNE, SNOW, BULLITT COUNTY SHERIFF'S OFFICE AND DOES 1-50'S MOTION TO DISMISS

---

Come Defendants, Assistant Bullitt County Attorney James Winchell in his individual capacity (hereafter "Winchell"); Bullitt County Sheriff's Deputy Alex Payne, individually and in his official capacity (hereafter "Deputy Payne");  Bullitt County Sheriff's Deputy Jonathan Snow, individually and in his official capacity (hereafter "Deputy Snow"); Bullitt County Sheriff's Office (hereafter "BCSO"); and DOES 1-50, (hereafter collectively "these Defendants"), by counsel, pursuant to *F.R.C.P.* 12(b)(6), LR 7.1, and submit this Reply supporting their Motion to Dismiss.

### INTRODUCTION

Plaintiff's Response fails to negate the fact that Plaintiff's claims fail as a matter of law. For the reasons stated in these Defendants' Motion and those further expounded upon below, these Defendants' Motion to Dismiss is properly granted.

### LAW & ARGUMENT

I.     **PLAINTIFF'S CONDUCT IS NOT PROTECTED BY THE FIRST AMENDMENT**

Plaintiff's argues he had third party standing to seek *habeas* relief for Mr. Zoeller and this is protected First Amendment activity.  [DN-12*, Response,* Page ID# 54-55].

### A. Plaintiff Did Not Have Standing as "Next Friend" to Mr. Zoeller

Before deciding whether Plaintiff's courtroom conduct was protected activity under the First Amendment, the Court must first decide if Plaintiff had third-party standing to make such an application for habeas relief on Mr. Zoeller's behalf.[1]  Here, for Plaintiff to have "next friend" standing, the Complaint must establish an adequate explanation for why Mr. Zoeller could not appear on his own behalf.  *Whitmore v. Arkansas,* 495 U.S. 149, 163 (1990) citing *Wilson v. Lane,* 870 F.2d 1250 (7th Cir. 1989) (no "next friend" where detainee could file petition); *Weber v. Garza,* 570 F.2d 511, 513-14 (5th Cir. 1978) (where detainee has not verified petition "next friend" must adequately explain why).  Here, Mr. Zoeller can prosecute his own habeas relief unless he was laboring under a mental condition substantially affecting his capacity to appreciate his position or make a rational decision, or if his conditions of confinement rendered his decision involuntary. *Smith By and Through Missouri Public Defendant Com'n v. Armontrout,* 812 F.2d 1050, 1053 (8th Cir. 1987); *Rees v. Peyton,* 384 U.S. 312, 314 (1966).  The Complaint makes no such allegations. Moreover, even if there was such an explanation, a "next friend" must have "some significant relationship with [Mr. Zoeller] the real party in interest."  *Whitmore ,* 495 U.S. at 163*, citing  Davis v. Austin*, 492 F.Supp. 273, 275–276 (N.D. Ga. 1980); *Cardin v. United States,* 947 F.3d 373, 376-77 (6th Cir. 2020).  No such relationship exists here.

Even when Plaintiff's Complaint is accepted as true, it is implausible Plaintiff has "next friend" standing.  [DN-1, *Complaint*, Page ID# 5, ¶ 30].  First, if Mr. Zoeller signed and verified the application for a writ of *habeas corpus*, then he acted on his own behalf and without a disability,

---

[1] Under 28 U.S.C.A. § 2242, an application for a writ of habeas corpus "shall be in writing *signed and verified* by the person for whose relief it is intended."  28 U.S.C.A. § 2242 (emphasis added).  § 2242 permits a "next friend" to act for the detainee in signing and verifying the application in certain circumstances.  *Id.*; *U.S. ex rel. Toth v. Quarles,* 350 U.S. 11, 13 n. 3 (1955).  But the "next friend" is not a party to the proceeding and does not have automatic standing; the detainee is the real party in interest. *Morgan v. Potter,* 157 U.S. 195, 198 (1895); *Nash ex rel. Hashimoto v. MacArthur,* 87 U.S. App.D.C. 268, 269–270 (D.C. Cir. 1950) *cert. denied*, 342 U.S. 838 (1951); *Whitmore v. Arkansas,* 495 U.S. 149, 163 (1990) *citing Id.*

eliminating the need for a "next friend." *Whitmore,* at 163 *citing Wilson,* 870 F.2d 1250. Secondly, if Plaintiff verified and signed the application, the Complaint must establish an adequate explanation for why Mr. Zoeller could not prosecute it, but there is no such explanation. *Id.* The Complaint also fails to establish any relationship, let alone a significant one, between Mr. Zoeller and Plaintiff to support "next friend" standing. *Id.,* citing *Davis,* F.Supp. at 275–276 (minister and first cousin of prisoner denied "next friend" standing); *Cardin,* 947 F.3d at 376-77 (sister of incapacitated man proper as "next friend"). Thirdly, ¶ 30 and ¶ 10 of the Complaint, when accepted as true, show Plaintiff signed and verified the application, did not act as "next friend" to Mr. Zoeller, but instead was "representing himself and not acting as representative of another." [DN-1, *Complaint*, Page ID# 3, ¶ 10]. Therefore, it is implausible Plaintiff has "next friend" third party standing to justify his Retaliatory Arrest claim.

**B. Plaintiff Was Not Exercising First Amendment Protected Rights**

Plaintiff argues, without any supporting authority, his petitioning for *habeas* relief, criticizing official conduct, and facilitating judicial review of Mr. Zoeller's detention are protected by the First Amendment. [DN-12*, Page ID# 55]. But such allegations are inconsistent with activities the Sixth Circuit routinely protect under the First Amendment in the context of retaliatory arrest claims.[2] Instead, the Complaint fails to establish Plaintiff had any right, let alone one protected by the First Amendment, to appear in court while "representing himself and not acting as a representative of another" to argue *habeas* relief for Mr. Zoeller, particularly without "next

---

[2] Such activity includes verbal criticism and insults directed at police officers, their political views, and/or government officials or policies, including those uttered on social media. *Kennedy v. City of Villa Hills, Ky.,* 635 F.3d 210 (6th Cir. 2011); *Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002). Recording and filming of police officers in public. *Freeman v. Spoljaric*, 667 F.Supp.3d 636 (S.D. Ohio 2023); *Crawford v. Geiger*, 996 F.Supp.2d 603 (N.D. Ohio 2014). Peaceful protests and demonstrations. *Hartman v. Thompson*, 931 F.3d 471 (6th Cir. 2019). Filing civil lawsuits and pursuing complaints against police officers or the government. *Kennedy,* 635 F.3d 210; *Gonzalez v. Trevino,* 602 U.S. 653 (2024). Speaking at public meetings and comment sessions. *Lozman v. Riviera Beach*, 585 U.S. 87 (2018); *Frenchko v. Monroe*, 160 F.4th 784 (6th Cir. 2025).

friend" standing.    [DN-1, Page ID# 3, ¶ 10]; *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *Whitmore,* 495 U.S. at 163. Therefore, this claim must be dismissed.  *Fed. R. Civ. P.* 12(b)(6).

## II.    <u>PLAINTIFF'S RESPONSE DOES NOT SHOW RETALIATORY MOTIVE</u>

Further undercutting this claim is Plaintiff's failure to establish a retaliatory motive.  Even assuming *arguendo,* Plaintiff adequately alleges an absence of probable cause for the warrant, contrary to Plaintiff's Response, the Complaint does not show these Defendants acted with a retaliatory motive.  [DN-12*,* Page ID# 57-58].  Plaintiff alleges he complained about perceived misconduct by a deputy sheriff on January 27, 2025 <u>at the Bullitt County Judicial Center, not the BCSO</u>*,* or to Deputy Payne or Snow, or any other identified deputy.  [DN-1*,* Page ID# 3, ¶ 12] (emphasis added).  There are no allegations stating to whom Plaintiff allegedly complained, which alleged deputy Plaintiff complained of, or that Deputy Payne, Snow or Attorney Winchell knew of it <u>before</u> the subject warrant was pursued on January 28, 2025.  *Id.*

Retaliatory Arrest requires a causal connection between the protected conduct and the adverse action, meaning <u>the protected activity must have been a substantial or motivating factor for these Defendants</u>.  *Bell,*  308 F.3d at 602; *Thaddeus-X*, 175 F.3d at 394 (emphasis added).

The Sixth Circuit has interpreted "motivating factor" as but-for causation – "without which the action being challenged simply would not have been taken." *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007).  For example, a plaintiff's protected activity is considered a "motivating factor" upon an explicit or strong inference the officer knew of the protected activity.  *Thaddues-X,* 175 F.3d 378; *Wells v. Rice,* 692 F.Supp.3d 735 (E.D.K.Y. 2023) (officer's threatening statements came after he knew plaintiff criticized him on social media).  Where, as here, Plaintiff relies solely on temporal

proximity, there must be other strong indicators the officials knew of the protected activity to establish causality. *Sensabaugh,* 937 F.3d 621 ("temporal proximity alone is rarely, if ever, sufficient to establish causation"); *Vereecke,* 609 F.3d at 400 (inferring intent must include other indicia of retaliation). Therefore, a condition precedent to any causal inference is establishing the officer who took the adverse action as having knowledge of the plaintiff's protected conduct. *Id.* Absent such knowledge, there can be no retaliatory intent and no causal connection. *Alston v. City of Detroit Police Officers*, 717 F. Supp. 3d 618 (E.D. Mich. 2024).

Here, the Complaint alleges the warrant for Plaintiff's arrest was issued on January 28, 2025, a day after Plaintiff complained of perceived misconduct.  [DN-1*, Page ID# 3, ¶¶ 12-13]. However, the Complaint fails to show Deputy Payne, Snow, or Attorney Winchell knew this.  *Id.* Moreover, the Complaint alleges what supported the warrant pertained to matters from December 6, 2024, not January 2025.  [DN-1, Page ID# 3, ¶14].  As established, Plaintiff's conduct during the December 6, 2024 habeas proceeding was not protected activity, but it was the impetus for the warrant for unauthorized practice of law.  Therefore, it cannot be reasonably inferred Plaintiff's alleged protected activity on January 27, 2025 was a "motivating factor" in the procuring a warrant and Plaintiff's arrest.  [*Id.,* Page ID# 6-7, at ¶¶ 38-42]; *Bell,* 308 F.3d at 602.  As such, the Complaint fails to show these Defendants knew of the January 27, 2025 complaint, making it implausible the arrest was retaliatory, and why this claim fails. *Fed. R. Civ. P.* 12(b)(6).

## III.    **PLAINTIFF'S RESPONSE DOES NOT REHAB SELECTIVE ENFORCEMENT**

Because the Complaint fails to establish Plaintiff's membership in "a particular race, religion, or other identifiable group" with traditional suspect classifications, he must show he belongs to a "group exercising constitutional rights." *Straser v. City of Athens*, 951 F.3d 424 (6th Cir. 2020); *Gardenhire*, 205 F.3d 303.  Plaintiff's petition for *habeas* review of Mr. Zoeller's

detention is not protected under the First Amendment so this allegation cannot serve as a basis for the requisite group membership.  [DN-1, Page ID# 5, ¶ 28]; *Morgan v. Potter,* 157 U.S. 195, 198 (1895); *Nash ex rel. Hashimoto v. MacArthur,* 87 U.S. App.D.C. 268, 269–270 (D.C. Cir. 1950) *cert. denied*, 342 U.S. 838 (1951); *Whitmore v. Arkansas,* 495 U.S. 149, 163 (1990).

Since Plaintiff tries to show disparate treatment by alleging activities which are not constitutionally protected, no plausible reading of the Complaint indicates Plaintiff belonged to a group exercising constitutional rights.  *Id.*  Moreover, Plaintiff's Response does not compare his alleged situation with any groups the Sixth Circuit recognizes as groups exercising constitutional rights in selective enforcement actions.  *Stemler v. Florence,* 126 F.3d 856 (6th Cir. 1997); *Baker v. Bindner,* 274 F.Supp. 658 (W.D.K.Y. 1967).

Additionally, the Response fails to articulate plausible allegations "similarly situated persons outside [his] category were not prosecuted" as required in a Selective Enforcement claim. *Straser*, 951 F.3d 424; *Gardenhire*, 205 F. 3d 303.  Instead, the Complaint merely alleges how unauthorized practice of law might be prosecuted on a broader statewide level.  See [DN-10-1, Page ID# 34] *and* [DN-1, Page ID# 7, ¶ 45].  However, this is not specific to these Defendants targeting Plaintiff but failing to target others, whose conduct and circumstances were truly aligned with Plaintiff, at the time of his arrest.  *Id.*  Failing to sufficiently identify similarly situated persons who were outside the alleged protective group of the plaintiff, but not prosecuted, is fatal to a selective enforcement claim at the pleading stage.  *Lewis v. Tackett*, 697 F.Supp.3d 702 (E.D.K.Y. 2023) *citing Rieves v. Town of Smyrna, Tennessee,* 959 F. 3d 678, 700 (6th Cir. 2020).  Therefore, even if accepted as true, this claim must be dismissed as the alleged disparate treatment of Plaintiff is implausible.  *Id.; Fed. R. Civ. P.* 12(b)(6).

Further, Plaintiff's Response fails to overcome the Complaint's deficiencies in establishing the enforcement "stemmed from a discriminatory purpose." *Straser*, 951 F.3d 424. A viable Selective Enforcement claim requires showing these Defendants were motivated by discriminatory intent. *Id., Gardenshire,* 205 F.3d 303; *Bennett v. City of Eastpointe,* 410 F.3d 810 (6th Cir. 2005) (when *Gardenshire* is applied to law enforcement, discrimination is purposeful only if it is intended to accomplish some forbidden aim, such as intentional selective enforcement because of race, nationality, religion, gender, or other arbitrary classification). In *Bennett,* discriminatory purpose was established by a superior officer's written directives to "investigate any black youths riding [bicycles] through our subdivisions." 410 F.3d at 815-16. The Sixth Circuit found this explicit policy sufficient for discriminatory purpose. *Id.* Likewise, an officer's decision on whether to enforce a law or rule that hinged on the race or ethnicity of a suspect is sufficient for discriminatory purpose. *Farm Labor Organizing Committee v. Ohio State Highway Patrol,* 308 F.3d 523 (6th Cir. 2002). Further, like *Stemler,* an officer perceiving a person's membership in a suspect class in deciding whether to arrest, constitutes sufficient discriminatory purpose, violating Equal Protection because the officer chooses arrest "out of a desire to effectuate animus against" a protected class, not his/her duty to enforce the law. 126 F.3d 856.

Here, the Complaint does not show these Defendants acted with a discriminatory purpose. Plaintiff's Response provides one case, *United States v. Myrie,* 167 F.4th 876 (6th Cir. 2026), as support for its argument Defendants' alleged departure from normal procedures equates to discriminatory purpose. [DN-1, Page ID# 5, ¶¶ 26-27]. However, these Defendants' alleged departure from normal procedures is inapposite to that case.[3] Here, the Court is analyzing

---

[3] *Myrie* discussed "departures from normal procedures" under an equal protection claim against legislative decisionmakers for enacting 8 U.S.C.A. § 1326 (unlawful reentry of prior removed illegal alien) and allegedly adhered to its problematic racist legislative history. 167 F.4th at 877. There, the plaintiff alleged § 1326 was motivated by a

discriminatory purpose in the context of a decision to arrest, not legislative action or intent, making departures from normal procedures within the *Vill. Of Arlington Heights* framework inapplicable. Therefore, these Defendants' alleged departure from normal procedures for Plaintiff's arrest is not probative of a discriminatory purpose, and this claim must be dismissed for failing to meet its exceptionally demanding requirements. *Fed. R. Civ. P.* 12(b)(6).

## IV.  FALSE ARREST CLAIM IS NOT VIABLE

Plaintiff's Complaint is ambiguous as to which Defendants are accused of False Arrest. [DN-1, Page ID# 7, ¶¶ 48-49].  To the extent this claim is against any Defendant, other than Deputy Snow, for acts or omissions related to procurement of the subject warrant, those claims must be dismissed.  Where a valid (or apparent) valid power to arrest exists, the state law remedy is malicious prosecution, not false imprisonment. *Mills v. Owsley County, Kentucky,* 483 F.Supp.3d 435 (E.D.K.Y. 2020).  Even if the procuring officer omitted material information from the warrant but did not serve it and effectuate arrest, the proper remedy is malicious prosecution. *Juillerat v. Mudd,* 735 Fed.Appx. 887 (6th Cir. 2018).  Therefore, there can be no false arrest claim against Attorney Winchell, BCSO, Deputy Payne, or DOES 1-50.

To the extent the claim is against Deputy Snow, Plaintiff's Response argues Snow lacked reasonable grounds to arrest due to known errors in the affidavit underlining the warrant. [DN-12, Page ID# 60].  But the Complaint does not allege Snow knew of any errors or had reason to believe the affidavit was materially defective.  [DN-1, Page ID# 7, ¶¶ 14-20].  Instead, the Complaint simply alleges Judge Porter issued an electronic warrant around 11:51 a.m. and Deputy Snow thereafter executed the same day, arresting Plaintiff around 3:40 p.m.  [*Id.,* Page ID# 7, ¶¶ 21-23]. Under Kentucky law, which is coterminous with the Fourth Amendment, a facially valid arrest

---

discriminatory purpose, requiring the Court to analyze it under the *Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 266-68 (1977) framework, which includes considering a departure from normal procedures.

warrant exists if it issued by a neutral and detached magistrate, supported by probable cause, as shown by an oath of affirmation, and it describes with particularity the person to be seized.  KY CONST. § 10; RCr. 13.10; *United States v. Whiteside,* 141 F.4th 734 (6th Cir. 2025).  To be facially invalid, the warrant must be so facially deficient that no reasonably well-trained officer should rely on it or cannot reasonably presume its validity.  *United States v. Leon,* 468 U.S. 897, 923 (1984) *citing Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319 (1979).  Here, there is no allegation to support the notion that any reasonably well-trained officer, like Deputy Snow, would be unable to presume it was valid.  When accepting the Complaint as true, the warrant was not facially invalid, as Judge Porter was a neutral and detached magistrate, the affidavit did not lack an oath, affirmation or any indicia of probable cause, or lack sufficient particularity about the person to be seized.  *Id.*  As such, Deputy Snow had reasonable grounds for the arrest and for all these reasons, the False Arrest claims must be dismissed.  *Fed. R. Civ. P.* 12(b)(6).

## V.     <u>ABUSE OF PROCESS CLAIM LACKS ULTERIOR PURPOSE</u>

Plaintiff argues the core allegations in the Complaint establishing these Defendants had the requisite ulterior purpose to support the Abuse of Process claim is their alleged retaliatory motive during the warrant process.  [DN-12, Page ID# 60-61].  But the Complaint does not sufficiently show retaliatory motive in the warrant process.  There is no allegation these Defendants knew or had reason to believe Plaintiff made the alleged January 27, 2025 complaint about perceived misconduct.  [DN-1, Page ID# 3, ¶ 12].  Additionally, the Complaint lacks any indicia these Defendants were motivated by Plaintiff's January 27, 2025 complaint in procuring the warrant to arrest for conduct that occurred on December 6, 2024.  [DN-1, ¶¶ 12-14].  Like the Retaliatory Arrest claim, Plaintiff simply relies on temporal proximity to infer retaliatory motive, but the Complaint lacks other indicia these Defendants had an ulterior purpose outside the regular course

of obtaining and serving a warrant for alleged criminal conduct, which requires dismissal.[4] *Sensabaugh,* 937 F.3d 621; *Fed. R. Civ. P.* 12(b)(6).

## VI.   *CLARK V. ABDALLAH* DOES NOT SUPPORT FABRICATION OF EVIDENCE

Plaintiff's Response fails to show how the lack of constitutional basis or focus of this claim, under the Fourth or Fourteenth Amendment, is not fatal.  [DN-12, Page ID# 61].  On the contrary, *Clark v. Abdallah* does not support Plaintiff's position. 131 F.4th 432, 447 (6th Cir. 2025).  While Plaintiff correctly points out *Clark* discussed how a fabrication of evidence claim can be brought under both amendments, *Clark* is not like the instant Complaint.[5]  In *Clark,* the Court held the complaint "put Defendants on notice that Plaintiffs were asserting violations of their rights under the Fourth and Fourteenth Amendments."  *Id.*  This Complaint fails to show any alleged due process violation under the Fourteenth Amendment and relies on hollow retaliatory motive allegations insufficient to show a Fourth Amendment violation.  [DN-1, Page ID# 9-10, ¶¶ 60-65].

Moreover, the Complaint utterly lacks any mention of the disposition of Plaintiff's criminal case, thereby leaving out key allegations on whether there is a reasonable likelihood the false evidence could have affected the judgment of the jury.  *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006).  Therefore, in *Clark,* unlike here, the operative complaint made it readily apparent that a cause of action was stated under the Fourth Amendment's right to be free from unlawful seizures and the Fourteenth Amendment's due process clause.  131 F.4th at 448.  Because the *Clark* complaint was properly attuned to the distinct focus of each amendment, and the

---

[4] When accepted as true, the allegations do nothing more than show the warrant process was carried to its authorized conclusion, here, arresting Plaintiff on January 28, 2025 for committing unauthorized practice of law on Dec. 6, 2024.
[5] Unlike here *Clark* plaintiffs alleged defendants violated the Fourth Amendment by "deliberately and knowingly fabricat[ing] evidence to manufacture probable cause for an arrest warrant" and the Fourteenth Amendment by violated their plaintiffs' "right to be free from ... prosecution based on fabrication of evidence" and using it "to later secure [p]laintiffs' convictions."  *Id.,* at 447-448. However, here, the Complaint's implausible retaliatory motive are the basis of this claim's alleged fabrication supporting the arrest warrant, undercutting the viability of such a claim under the Fourth Amendment.  *Vereecke,* at 400 *quoting Leonard*, 477 F.3d at 355; *Sensabaugh,* 937 F.3d 621.

Complaint here has not, these Defendants are without sufficient notice of which claims Plaintiff may be entitled to right to relief above a speculative level. *Id., Fed. Rules of Civ. P. R*. 8(a).

Additionally, Plaintiff points to the allegations of minor deficiencies in the affidavit, but this ignores the fact the Complaint fails to lay out allegations specific to Plaintiff's criminal charge being based on a false accusation. [DN-12, Page ID# 61-62]; *Brown v. Louisville Jefferson County Metro Government,* 2017 WL 4288886 at *6 (Sept. 27, 2017 W.D.K.Y., Louisville Division). Moreover, Plaintiff's Response does not address the allegations showing Plaintiff improperly represented himself during Mr. Zoeller's habeas proceeding and facilitated judicial review of same without a law license, which contradicts the allegations Attorney Winchell knowingly fabricated evidence of Plaintiff's unauthorized practice of law.   [DN-1, Page ID # 3-5, ¶¶ 10, 14, 28 and 30]. Finally, the Response fails to address the lack of facts pertaining to the prosecution of Plaintiff's criminal charges and its disposition, which fails to establish any reasonable likelihood the subject evidence would adversely affect the judgment of a jury. *Brown,* at *6; *Gregory,* 444 F.3d 725; *Stemler*, 126 F.3d 856.   For all these reasons, the Complaint fails to state a claim upon which relief can be granted, and this claim must be dismissed. *Id., FRCP R.* 12(b)(6).

## VII.    **PLAINTIFF'S RESPONSE DOES NOT OVERCOME *MONELL* DEFICIENCIES**

The *Monell* theories Plaintiff proposes cannot be maintained.[6]   First, ratification of unconstitutional conduct by policy makers can support *Monell* liability but Plaintiff bases his specific ratification on a lack of discipline, while simultaneously acknowledging the *Monell* policy maker and supervisor is Defendant Payne, an alleged active participant in the warrant process. [DN-12, Page ID# 66].   The single case Plaintiff relies on as authority that his *Monell* ratification theory can be premised on such allegations, *Bd. of County Comm'rs of Bryan County v. Brown*,

---

[6] The Response posits *Monell* liability theorized on Ratification, Policy of Reckless Affidavit Preparation, Failure to Train, and Deputy Payne's status as Chief Deputy.  [DN-12, Page ID# 64-65].

cites to the dissent, making it inapplicable.  520 U.S. 397 (1997).[7]  Moreover, when accepted as true, this theory is implausible because it alleges Defendant Payne, a direct participant in the alleged injurious acts and BCSO supervisor, failed to discipline himself, and further failed to discipline Attorney Winchell, who is outside BCSO's employ and Payne's supervisory authority. Therefore, Plaintiff's *Monell* ratification arguments and such theory must be disregarded.

Secondly, Plaintiff posits no authority that his "Reckless Affidavit Preparation" theory can support *Monell* liability.  [DN-12, Page ID# 64]. Further, it is unclear what policy, if any, this theory alleges to be the moving force behind the injury, and whether this theory is tied to BCSO's policy making authority or Defendant Payne's alleged policy making authority as a supervisor, or some other unnamed party/entity.[8]  Because Plaintiff fails to adequately identify a BCSO policy or custom applicable to this theory, a plausible decisionmaker responsible for it, and show Plaintiff's particular injury was incurred due to its execution, it is not a viable *Monell* theory and must be dismissed. See [DN-10-1, Page ID# 39-42]; *FRCP R.* 12(b)(6).

Third, *Monell* liability can be premised on Failure to Train,  but to the extent Plaintiff's theory, as the Response suggests, is tied to Defendant Payne's supervisory or alleged policy making authority, it is not viable.  [DN-12, Page ID# 66].[9]  Therefore, to the extent such theory bases policy making authority of Defendant Payne as support for its *Monell* cause of action against BCSO, it is not viable, because Plaintiff's Complaint fails to adequately identify a BCSO training

---

[7] *Brown* is also distinguishable because ratification there did not involve a lack of discipline but the question of whether a policymaker's hiring decision can trigger municipal liability under *Monell.*

[8] Plaintiff argues the "speed with which the series of events occurred suggests *Bullitt County personnel* are familiar with routinely creating affidavits…" establishes *Monell's* elements, but it creates a significant ambiguity as to the applicable policy and its policy maker. [DN-12, Page ID# 64] (emphasis added).

[9] Plaintiff relies on *Gregory v. Louisville,* but the Court there overturned summary judgment because it was the defendant city's policy in failing to train on handling of exculpatory evidence which connected Louisville to potential *Monell* liability, not the individual supervisor.  444 F.3d 725, 753 (6th Cir. 2006)

policy and connect same as the moving force behind Plaintiff's alleged injuries. *City of Canton, Ohio,* 486 U.S. 378, 386-88 (1989); *Monell,* 436 *U.S.* at 694.

Additionally, with no authority, Plaintiff alleges Defendant Payne's "Senior Role" and previous employment at a different agency supports *Monell* liability. [*Id.,* Page ID# 66]. Not only should this unsupported theory be dismissed, but it is not remotely probative of whether execution of a BCSO policy, formally approved by BCSO decisionmakers, was or was not the moving force behind a constitutional violation. *City of Los Angeles v. Heller,* 475 U.S. 796 (1986).

Finally, Plaintiff's Response fails to articulate how any BCSO policy or custom applies to Attorney Winchell, or how his edicts or acts represented BCSO official policy. *Monell,* 436 U.S. at 694-95. Even if true, Attorney Winchell's acts and omissions are within the chain of events that led Deputy Payne to procure the warrant and Deputy Snow to execute same, but the Complaint does not establish Plaintiff's constitutional rights were violated by Attorney Winchell carrying out BCSO policy. [*Id.*]; [DN-1, Page ID# 7-9, ¶¶ 50-59]. For this and as discussed in Defendant's Motion, Plaintiff's *Monell* claims are implausible and must be dismissed. *FRCP R.* 12(b)(6).

## VIII. ATTORNEY WINCHELL'S IMMUNITY IS DERIVED FROM HIS ALLEGED ROLE AS A COMPLAINIG WITNESS NOT A PROSECUTOR

Plaintiff's Response misconstrues these Defendants' immunity arguments for Attorney Winchell as tied to his function as a prosecutor, but the grounds for Winchell's immunity lie in his alleged role as a complaining witness. *Compare* [DN-12, Page ID# 62-63] *with* [DN-10-1, Page ID# 43-44].[10] There are key distinctions between the instant Complaint and *Kalina v. Fletcher,*

---

[10] The Complaint specifically alleges "[Mr.] Winchell was not exercising a prosecutorial role, but instead functioning as a complaining witness…" [DN-1, Page ID# 4, ¶ 17]. Contrary to Plaintiff's characterization of Defendants' immunity arguments and the Complaint, Attorney Winchell's immunity is not based on exercise of professional judgment in selecting facts to justify probable cause for a criminal offense. The Complaint alleges Deputy Payne served this function in his role as a law enforcement officer, not Attorney Winchell. *See,* [DN-1, Page ID# 3, ¶ 14]. Therefore, Plaintiff's Response conflates Attorney Winchell and Deputy Payne's alleged roles in procurement of the warrant to side-step Winchell having immunity as a complaining witness. [*Id.*].

which Plaintiff cites for why Attorney Winchell is not immune. [DN-12, Page ID# 62]. In *Kalina,* petitioner prosecutor commenced the underlying criminal proceeding by filing three court documents: an information that charged respondent with burglary, a motion for an arrest warrant, and a "certification for determination of probable cause." 522 U.S. 118, 121 (1997). Petitioner's third filed document "certification for determination of probable cause" <u>summarized the evidence supporting the charge</u> and included a certification that personally vouched for the truth of the facts set forth therein. *Id.* (emphasis added). The *Kalina* Court found two materially inaccurate factual statements in the certification and held this document, unlike the other two, was not protected by absolute prosecutorial immunity. *Id.* Unlike Attorney Winchell, the *Kalina* prosecutor did not provide eyewitness testimony. *Id.* The instant Complaint alleges Winchell witnessed Plaintiff commit unauthorized practice of law and functioned solely in this capacity, not as an advocate. [DN-1, Page ID # 3-4, ¶¶ 16-17]. The Complaint does not allege Attorney Winchell prosecuted Plaintiff, or certified probable cause, as that role allegedly belonged to Deputy Payne. [DN-1, Page ID # 3-4, ¶¶ 14, 16-17]. At best, Plaintiff's Response muddles the meaning of Deputy Payne and Attorney Winchell's alleged roles for procurement of the warrant into ambiguity. The more logical interpretation, even when viewing the Complaint in the light most favorable to Plaintiff, is the purported roles of Payne and Winchell internally contradict, rendering them implausible and insufficient to state a claim above the speculative level and entitlement to relief. *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. 544; *LULAC,* 500 F.3d at 527.

For all these reasons, *Kalina* is materially distinguishable from Attorney Winchell's role. 522 U.S. 118. Therefore, Winchell enjoys immunity as a complaining witness testifying in a judicial proceeding. [DN-10-1, Page ID# 62-63]; *Briscoe v. LaHue,* 460 U.S. 325, 323-33 (1983); *Rehberg v. Paulk,* 566 U.S. 356 (2012).

## IX.    DEPUTY PAYNE HAD NO DUTY TO INTERVENE IN WINCHELL'S ROLE AS COMPLAINING WITNESS

The Complaint alleges Attorney Winchell acted as a complaining witness when Deputy Payne collected his testimony for procurement of the warrant.  [DN-1, Page ID # 3-4, ¶¶ 14, 16-17].[11]  When taken as true, Deputy Payne did not observe what Winchell allegedly observed on December 6, 2024 when Plaintiff appeared in Court to facilitate and argued habeas corpus on behalf of Mr. Zoeller.  [*Id.,* Page ID# 3-4, ¶¶ 10,17-19].  Also, when taken as true, the Complaint does not establish Deputy Payne had reason to know whether any constitutional violation was or would occur in conjunction with Attorney Winchell's representations to Payne when he procured the warrant for Plaintiff's arrest.  [*Id.*].  Failure to establish these facts is fatal to Plaintiff's Failure to Intervene Claim, which requires showing Deputy Payne <u>observed or had reason to know that a constitutional violation would be or was occurring</u> and he <u>had the opportunity and the means to prevent</u> the harm from occurring.  *Daugherty v. Louisville-Jefferson County Metro Government*, 495 F.Supp. 513, 525 (W.D.K.Y. 2020) citing *Sheffey v. City of Covington*, 564 Fed. App'x 783, 793 (6th Cir. 2014).  The facts as pled do not identify Deputy Payne as having the "opportunity and means" to prevent a constitutional violation that might occur from using Winchell's eyewitness testimony in procuring the warrant.  *Id.*  As such, Plaintiff has failed to sufficiently allege what actions Deputy Payne should have taken or when, to prevent an alleged constitutional violation.[12]

---

[11] Specifically, it is alleged Deputy Payne "was not a witness to the acts alleged in his affidavit."  [*Id.,* ¶ 16].

[12] Moreover, as discussed in Defendants' Motion, the Sixth Circuit has not extended an officer's duty to intervene much beyond excessive force, and certainly not in this context, to intervening in a complaining witness' testimony of events that occurred outside the presence of the officer who is procuring a warrant.  *Virgil v. City of Newport,* 545 S.Supp. 3d 444, 447-88 (E.D.K.Y. 2021) *citing Bunkley v. City of Detroit*, 902 F.3d 552, 556 (6th Cir. 2018) *and Sheffey v. City of Covington,* 564 F.App'x 783, 793 (no duty to intervene in prosecution where officers had no knowledge probable cause did not exist at time of arrest or when charges filed).

Respectfully submitted,

/s/ Carol Schureck Petitt
Carol Schureck Petitt
Matthew R. Bastin
VAUGHN PETITT LEGAL GROUP, PLLC
7500 West Highway 146
Pewee Valley, Kentucky 40056
cpetitt@vplegalgroup.com
mbastin@vplegalgroup.com
COUNSEL FOR DEFENDANTS WINCHELL,
PAYNE, SNOW AND BULLITT COUNTY
SHERIFF'S OFFICE

## CERTIFICATE OF SERVICE

It is hereby certified that on this 4th day of May 2026, a true and correct copy of the foregoing document was filed and served via the CM/ECF system and/or U.S. Mail to:


Adrienne Southworth
112 Poplar Drive
Lawrenceburg, KY 40342
502-600-1547
AttAky@proton.me
COUNSEL FOR PLAINTIFF

/s/ Carol S. Petitt
VAUGHN PETITT LEGAL GROUP, PLLC